UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MEBRHATO TSEHAI, | ) | 1:05-CV-1160 OWW JMD HC |
| Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ) | |
| | ) | |
| TERESA A. SCHWARTE, | ) | |
| Respondent. | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Kings County Superior Court. A jury convicted him of gassing a peace officer. The trial court sentenced him to four years in state prison. (Answer at 1.)

Petitioner filed an appeal in the California Court of Appeal. The court affirmed the judgment in a reasoned opinion. (Answer at 1; Lodged Docs. 1-4.)

Petitioner filed two petitions for review in the California Supreme Court. The court summarily denied review. (Answer at 2; Lodged Docs. 5-7.)

Petitioner filed two petitions for writ of habeas corpus in the Kings County Superior Court, two in the California Court of Appeal, and four in the California Supreme Court. All of the petitions

were denied. (Answer at 2; Lodged Docs. 8-11.)

On September 14, 2005, Petitioner filed the instant petition in this Court. The petition raises the following two grounds for relief: 1) ineffective assistance of trial counsel; and 2) ineffective assistance of appellate counsel.

On January 29, 2008, Respondent filed an answer to the petition.

**FACTUAL BACKGROUND[1]**

On June 14, 2003, Corcoran State Prison Correctional Officer John Amaro picked up Petitioner's empty breakfast tray through the food port in the cell door and handed Petitioner his sack lunch. Just as Officer Amaro was closing the food port, Petitioner stuck his hand out the port and threw a very strong urine-and-feces-smelling brownish liquid and solid substance from a cup at Officer Amaro. As he threw it, Petitioner said while laughing and pointing, "How did my shit taste you punk ass bitch?" The substance hit the skin on Officer Amaro's left leg, left eye, his mouth, and the left side of his face. Officer Amaro believed there were eight ounces of substance in the cup. After washing the substance out of his eye, Officer Amaro was taken to the hospital at the prison for treatment. Correctional Officers Dennis Smithpeters and Josie Murillo also saw the incident and described it similarly.

Correctional Officer Ricardo Gomez collected evidence after the incident, noting that the substance in the cup looked and smelled like brown fecal matter. The puddle on the floor next to the cell covered about the area of a legal size piece of paper. Officer Gomez used a cotton swab to collect some of the fecal matter for testing, a second swab to collect some of the liquid substance, and a third swab to collect a sample from a nearby apparently clean area of the concrete. When Officer Gomez attempted to take a photograph of Petitioner, Petitioner said "That was two days worth of shit."

Forensic toxicologist and microbiologist Roger Peterson tested samples of the substance thrown by Petitioner and determined that two of the three samples collected contained fecal matter. Peterson did not conduct any tests to determine from whom the fecal matter came.

---

[1] The facts are derived from the statement of facts set forth in Respondent's brief filed in the California Court of Appeal. (Lodged Doc. 2.)

<u>Defense</u>

Petitioner testified on his own behalf. He claimed that they turned the water off for 30 days because the toilet had flooded the tier. Also, the flushing mechanism was not working very well so a plumber came in to fix it. On June 14, 2003, the water was off in Petitioner's cell and had been for several days. Petitioner had asked numerous times that it be turned on so that he could flush the toilet but it was not done. When Petitioner handed out his food tray, he included his "hard shit," minus the urine, in the cup, but he did not throw it, it dropped. Just before Officer Amaro dropped the tray with the cup, he said something like, "it's time for me to go home." Petitioner never made any statements at the time of the incident or to Officer Gomez. Petitioner denied ever throwing anything at Officer Amaro.

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Kings County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law

U.S. District Court
E. D. California        Jp                                    4

erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions.  The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claims**

**A.  Ground One**

Petitioner argues that his trial counsel was ineffective in not 1) calling Vince Green as a witness; 2) making a *Pitchess*[2] motion; 3) moving to set aside the charges; and 4) conducting a DNA test on a jumpsuit.

These claims were presented in a petition for writ of habeas corpus to the California Supreme Court.  The court summarily denied the petition.  (Answer at 2; Lodged Doc. 9.)  When the state court reaches a decision on the merits but provides no reasoning to support its conclusion, we independently review the record to determine whether the state court clearly erred in its application of Supreme Court law.  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  However, although we independently review the record, we still defer to the state court's ultimate decision.  Id.

The law governing ineffective assistance of counsel claims is clearly established for the

---

[2] A *Pitchess* motion allows a defendant to obtain relevant personnel records of a law enforcement officer, such as prior complaints of misconduct against the officer, upon a showing of good cause.  Pitchess v. Superior Court, 11 Cal.3d 531, 535-38 (1974); Warrick v. Superior Court, 35 Cal.4th 1011, 1017, 1019 (2005).

purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive the defendant of a fair trial, one whose result is reliable. Id. at 688. The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S. 648, 659 & n.25 (1984). Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of *Williams v. Taylor*, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

Petitioner's counsel was questioned at a *Marsden* hearing regarding several of the issues Petitioner now raises. Counsel explained that Vince Green, the witness Petitioner sought to call, was disruptive in the prison system and had significant influence over Petitioner. Counsel stated that Mr. Green "got [Petitioner] to do this incident; to do what he's accused of." (Petition, Ex. A at 8.) Counsel therefore refused to call Mr. Green as a witness because he "would probably be perjuring himself." (Id.) Counsel also explained that he considered moving to set aside the charges, but concluded that such a motion was not appropriate after reviewing the transcript of the preliminary hearing, and that he attempted to have DNA testing done on the jumpsuit, but was told that it was not possible to do DNA testing on fecal matter. (Id. at 8-9.)

Petitioner has not shown that counsel performed deficiently by not calling Vince Green, moving to set aside the charges, or conducting DNA testing on the jumpsuit, as the record discloses a reasonable basis for each of counsel's decisions. Petitioner has also not shown prejudice resulting from counsel's actions, as he has not set forth the likely testimony of Vince Green or shown that it was likely to affect the verdict. Further, he has made no showing that a motion to set aside the charges would have been successful or that a *Pitchess* motion would have disclosed evidence sufficient to overcome the evidence of his guilt.

**B. Ground Two**

Petitioner argues that his appellate counsel was ineffective in not raising the claims presented in this petition.

This claim was presented in a petition for writ of habeas corpus to the California Supreme Court. The court summarily denied the petition. (Answer at 2; Lodged Doc. 9.) When the state court reaches a decision on the merits but provides no reasoning to support its conclusion, we independently review the record to determine whether the state court clearly erred in its application of Supreme Court law. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). However, although we independently review the record, we still defer to the state court's ultimate decision. Id.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the two-prong test set forth in *Strickland*.

See, e.g., Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986). A defendant must therefore show that appellate counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, defendant would have prevailed on appeal. Miller, 882 F.2d at 1434 & n.9; Birtle, 792 F.2d at 849. However, appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Miller, 882 F.2d at 1434 n.10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. Miller, 882 F.2d at 1434. As a result, appellate counsel will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason--because he declined to raise a weak issue. Id.

The state court did not clearly err in its application of Supreme Court law. Petitioner has not shown deficient performance by appellate counsel or prejudice, as his ineffective assistance of trial counsel claims each lack merit for the reasons discussed above.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)©. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     November 10, 2008              /s/ John M. Dixon**
                                    UNITED STATES MAGISTRATE JUDGE